# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | **H 15-637** |
| v. | § § | CRIMINAL NO. |
| ALFONZO ELIEZER | § § | |
| GRAVINA-MUNOZ | § | |

United States Courts
Southern District of Texas
FILED

NOV 27 2015

David J. Bradley, Clerk of Court

## INFORMATION

THE UNITED STATES CHARGES:

### Introduction

At all times material to this information:

1.     Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company.  PDVSA and its subsidiaries were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government.  PDVSA and its wholly owned subsidiaries were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

2.     Defendant **ALFONZO ELIEZER GRAVINA MUNOZ** ("Defendant **GRAVINA**"), a resident of Fort Bend County, Texas, and a naturalized U.S. citizen since in or around 2006, was employed by PDVSA or by

wholly owned subsidiaries or affiliates thereof from in or around 1998 until in or around March 2014.  During that time, Defendant **GRAVINA** held a number of positions related to the purchase of energy services equipment and services, including purchasing manager.  Defendant **GRAVINA**'s job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects.  Defendant **GRAVINA** was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

3.    "BUSINESSMAN 1," an individual whose identity is known to the United States, was the owner of a number of U.S.-based energy companies that supplied equipment and services to PDVSA, and a resident of Texas, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

4.    "BUSINESSMAN 2," an individual whose identity is known to the United States, was the owner of a number of other U.S.-based energy companies that supplied equipment and services to PDVSA, and a resident of the United States, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).  BUSINESSMAN 1 and

2

BUSINESSMAN 2 worked together on a number of PDVSA contracts and contract bids.

## COUNT ONE
### (18 U.S.C. § 371 – Conspiracy)

5.      Beginning in at least 2007 and continuing through at least 2014, the defendant,

**ALFONZO ELIEZER GRAVINA MUNOZ,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with others known and unknown to the United States, including BUSINESSMAN 1 and BUSINESSMAN 2, to commit an offense against the United States, that is, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

3

## Purpose of the Conspiracy

6.      The purpose of the conspiracy was for Defendant **GRAVINA**,

BUSINESSMAN 1, BUSINESSMAN 2, and their co-conspirators to engage in

financial transactions to conceal and disguise bribe payments paid to Defendant

**GRAVINA**, all in an effort by BUSINESSMAN 1, BUSINESSMAN 2, and their

cohorts to secretly and illegally gain an improper advantage in obtaining and

retaining lucrative energy contracts with PDVSA.

## Manner and Means of the Conspiracy

7.      The manner and means by which Defendant **GRAVINA** and his co-

conspirators sought to accomplish the purpose of the conspiracy included, among

other things, the following, while in the Southern District of Texas and elsewhere:

8.      Defendant **GRAVINA**, together with others, including

BUSINESSMAN 1 and BUSINESSMAN 2, agreed that BUSINESSMAN 1 and

BUSINESSMAN 2 would pay bribes, and did in fact pay bribes, to Defendant

**GRAVINA** in exchange for Defendant **GRAVINA**'s assistance in placing

BUSINESSMAN 1's and BUSINESSMAN 2's companies on the bidding panels

for PDVSA projects; supporting BUSINESSMAN 1's and BUSINESSMAN 2's

companies before an internal purchasing committee; and providing

BUSINESSMAN 1 and BUSINESSMAN 2 with inside information about PDVSA

projects and bids.

4

9.      Defendant **GRAVINA**, together with others, including BUSINESSMAN 1 and BUSINESSMAN 2, attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes, which they referred to as "commissions," by frequently having the bribes paid out of bank accounts controlled by BUSINESSMAN 1 and BUSINESSMAN 2 that were in the name of companies other than the companies for which Defendant **GRAVINA** helped to secure PDVSA contracts.

10.      Defendant **GRAVINA**, together with others, including BUSINESSMAN 1 and BUSINESSMAN 2, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by directing bribe payments to be sent to various recipients other than himself.

11.      Defendant **GRAVINA**, together with others, including BUSINESSMAN 1, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by having certain of the bribes paid into an account held in the name of a close personal associate of Defendant **GRAVINA**, but over which Defendant **GRAVINA** held power of attorney.

12.      Defendant **GRAVINA**, together with others, including BUSINESSMAN 2, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by having certain of the bribes paid to a

5

relative of Defendant **GRAVINA** into an account held jointly in the name of Defendant **GRAVINA** and the relative.

13.     Defendant **GRAVINA** used the proceeds of the bribes sent by BUSINESSMAN 1 and BUSINESSMAN 2 to conduct personal financial transactions for Defendant **GRAVINA** and his relatives.

### Overt Acts

14.     In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

15.     On or about April 12, 2010, BUSINESSMAN 1 caused $164,570.23 to be transferred from a bank account in the name of a company owned by BUSINESSMAN 1 to pay off the balance of a mortgage loan in Defendant **GRAVINA**'s name for a residence in the Southern District of Texas, in exchange for Defendant **GRAVINA** providing BUSINESSMAN 1 with inside information, supporting BUSINESSMAN 1's companies before an internal purchasing committee, and ceasing any interference with the selection of BUSINESSMAN 1's companies for PDVSA contracts.

16.     On or about May 7, 2010, BUSINESSMAN 1 caused $135,429 to be transferred from a bank account in the name of a company owned by

6

BUSINESSMAN 1 to an account held in the name of a close personal associate of Defendant **GRAVINA**, but over which Defendant **GRAVINA** held power of attorney, in exchange for Defendant **GRAVINA** providing BUSINESSMAN 1 with inside information, supporting BUSINESSMAN 1's companies before an internal purchasing committee, and ceasing any interference with the selection of BUSINESSMAN 1's companies for PDVSA contracts.

17.    On or about January 28, 2011, BUSINESSMAN 2 caused $15,000 to be transferred from a bank account in Panama held in the name of a company owned by BUSINESSMAN 2 into a bank account in the Southern District of Texas held jointly in the name of Defendant **GRAVINA** and a relative, in exchange for Defendant **GRAVINA**'s assistance placing BUSINESSMAN 2's companies on PDVSA bidding panels.

18.    On or about June 6, 2011, BUSINESSMAN 2 caused $15,000 to be transferred from a bank account in Panama held in the name of a company owned by BUSINESSMAN 2 into a bank account in the Southern District of Texas held jointly in the name of Defendant **GRAVINA** and a relative, in exchange for Defendant **GRAVINA**'s assistance placing BUSINESSMAN 2's companies on PDVSA bidding panels.

19.    On or about January 29, 2012, Defendant **GRAVINA** used $6,688.22 in bribe proceeds sent by BUSINESSMAN 1 to the account held in the name of

7

Defendant **GRAVINA**'s close personal associate by writing a check drawn on that account to make a payment to a tax assessor for a home listed in Defendant **GRAVINA**'s name in the Southern District of Texas.

20.     On or about January 3, 2014, BUSINESSMAN 2 caused $15,000 to be transferred from a bank account in Panama held in the name of a company owned by BUSINESSMAN 2 into a bank account in the Southern District of Texas held jointly in the name of Defendant **GRAVINA** and a relative, in exchange for Defendant **GRAVINA**'s assistance placing BUSINESSMAN 2's companies on PDVSA bidding panels.

21.     On or about January 7, 2014, BUSINESSMAN 2 caused $15,000 to be transferred from a bank account in Panama held in the name of a company owned by BUSINESSMAN 2 into a bank account in the Southern District of Texas held jointly in the name of Defendant **GRAVINA** and a relative, in exchange for Defendant **GRAVINA**'s assistance placing BUSINESSMAN 2's companies on PDVSA bidding panels.

22.     On or about March 20, 2014, Defendant **GRAVINA** withdrew $93,267.87 in bribe proceeds from the account held jointly in the name of Defendant **GRAVINA** and a relative in the form of a cashier's check made payable to another of Defendant **GRAVINA**'s relatives.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## (26 U.S.C. § 7206(1) – Fraud and False Statements)

23.     Paragraphs 1 through 4 and 6 through 22 are realleged and incorporated by reference as though fully set forth herein.

24.     On or about March 21, 2011, in the Southern District of Texas and elsewhere, the defendant,

### ALFONZO ELIEZER GRAVINA MUNOZ,

did willfully make and subscribe a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2010, which was verified by a written declaration that it was made under the penalties of perjury and electronically filed with the Internal Revenue Service, which Defendant **GRAVINA** did not believe to be true and correct as to every material matter, that is, said return reported $98,298 on Line 22, Total Income, whereas Defendant **GRAVINA** then and there well knew and believed that figure was a false and understated amount because it failed to report approximately $643,140 in additional income Defendant **GRAVINA** had received in the form of bribe payments and other remuneration in 2010 from BUSINESSMAN 1, BUSINESSMAN 2, and other individuals and entities.

All in violation of Title 26, United States Code, Section 7206(1).

### Forfeiture Allegation

25.     As the result of committing one or more of the offenses charged in Counts 1 and 2 of this Information, the defendant, **ALFONZO ELIEZER**

9

**GRAVINA MUNOZ**, shall forfeit to the United States, pursuant to Title 18, United States Code, 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of these offenses, and all property traceable to such property.

## Substitute Asset Provision

26.     If any of the above-described forfeitable property in Paragraph 24, as a result of any act or omission of Defendant **GRAVINA**,

a.  Cannot be located upon the exercise of due diligence;

b.  Has been transferred or sold to, or deposited with, a third person;

c.  Has been placed beyond the jurisdiction of the Court;

d.  Has been substantially diminished in value; or

e.  Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of Defendant **GRAVINA** up to the value of the forfeitable property described above.

KENNETH MAGIDSON
UNITED STATES ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY:  _____          BY:  _____
     JOHN P. PEARSON                         AISLING O'SHEA
     DEPUTY CHIEF                            JEREMY R. SANDERS
     ROBERT JOHNSON                          TRIAL ATTORNEYS
     ASSISTANT UNITED STATES
     ATTORNEY

11